A. C. GREEN, Jr., and H. H. Parker, Individually and as Partners, G & G Machine Works, et al., Appellants,

v.

AETNA INSURANCE COMPANY, Appellee.

No. 21184.

United States Court of Appeals
Fifth Circuit.

June 29, 1965.

Rehearing Denied July 27, 1965.

William Q. Boyce, Amarillo, Tex., Jack Banner, Wichita Falls, Tex., for appellants.

David Bland, Houston, Tex., for appellee.

Before RIVES, BROWN and WISDOM, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This appeal challenges a declaratory judgment rendered on the Insurer's motion for summary judgment, F.R.Civ.P. 56, declaring that the Insurer is not obligated to defend a damage suit or pay any judgment rendered therein. Although the specific issue presented is the construction and application of policy terms, our disposition is affected by principles which bear on granting declaratory relief. 28 U.S.C.A. § 2201.

The Insurer [1] issued to the Assured [2] a standard Texas Comprehensive General Liability (CGL) policy. Consistent with its name, its coverage for personal injuries and death under Part I was virtually unlimited.[3] Limited only with "respect to such insurance as is afforded by this policy," the obligation to defend under Part II was likewise broad.[4] But structured as one now comes to expect, cf. Ocean Acc. & Guar. Corp. v. Aconomy Erectors, Inc., 7 Cir., 1955, 224 F.2d 242, 247, what was given in Parts I and II, notes 3 and 4, supra, shrunk considerably as tabular spaces on attached schedules were filled in or left blank. As a consequence, the Insurer asserts, the coverage was limited to "(a) Premises—Operations"; "(c) Independent Contractors"; and contractual liability under "(e) Contracts as Defined in Condition 3(a)." [5] And it contends that coverage for "Products (Including Completed Operations)" was expressly negatived both by the tabular language [6] and by formal endorsement

---

1. Aetna Insurance Company.

2. The Assureds were several individuals comprising several partnerships operating under trade names. The activity directly involved here was that of Rotary Joint Service whose shop was located in Perryton, Ochiltree County, Texas.

3. "Insuring Agreements
"I. Coverage A—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident."

4. "II. Defense, Settlement, Supplementary Payments. With respect to such insurance as is afforded by this policy, the company shall: (a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiations and settlement of any claim or suit as it deems expedient; * * *."

5. Item 3 of the attached declaration form stated:
"The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto."

6. On Schedule A to declaration form (note 3, supra), in the horizontal space marked "(d) Products (Including Completed

which excluded liability for "Products Hazards." [7]

This coverage and duty-to-defend controversy arises out of a damage suit filed December 7, 1961, by Billy Lee Schafer in the State Court. Schafer, an employee of Luke Grace Drilling Company, claimed to have been seriously injured January 22, 1961, on a drilling rig located in Hansford County, Texas, when a drill collar, which had previously been taken to the machine shop of the Assured Rotary Tool & Joint Company in Perryton, Texas, for reworking and return,

broke.[8] Because the State Court suit charged that the Assured Rotary Tool & Joint Company had delivered the drill collars back to the premises of the Drilling Company, its customer, the Insurer urged that this claim was not within the policy coverage since the occurrence was within "Products Hazards" as defined in the policy [9] which had been expressly excluded, notes 7 and 6, supra.

The problem of policy coverage was early recognized and raised. After obtaining a reservation agreement [10] the Insurer employed an Amarillo firm to

Operations)" there was typed: "NONE COVERED HEREUNDER."

Also in form following Item 3 where dollar amounts of coverage were inserted on the line for "Aggregate Products" there was type "NOT COVERED."

7. "Exclusion of Products Hazard

"This endorsement, effective 3/3/60, forms a part of Policy No. CGL 095743 * * *. It is agreed that the policy does not apply to the products hazard as defined therein."

The policy definition of "Products Hazard" is set out in note 9, infra.

8. As the duty to defend turns on the allegations, not the actual facts, the Insurer annexed a copy of the damage suit petition which described the occurrence and negligence as follows:

"On January 22, 1961, Billy Lee Schafer was employed as a floor hand for the Luke Grace Drilling Company in Hansford County, Texas. That prior to the above date certain drill collars, belonging to Luke Grace Drilling Company had been taken to the machine shop of Rotary Tool and Joint Company in Perryton, Texas for reworking. That on the 21st day of January, 1961 Luke Grace Drilling Company was advised that such drill collars were in condition to be picked up and returned to the rig for use. That thereafter, such collars were delivered to the rig and when one of the collars in question was being picked up to be joined on and placed in the string of pipe for use, a defect caused it to break, fall and strike Billy Lee Schafer across the back, crushing him and paralyzing him from the waist down.

"That Rotary Tool and Joint Company and its owners, acting by and through their employees or agents was guilty of negligence in failing to prop-

erly inspect the drill collar in question, in failing to repair the same, in declaring the same was in condition for use, in warranting that such joint would be properly repaired and in failing to warn that in truth and in fact no proper repairs had been made on such drill collar and each and every one of the above acts, individually or collectively constituted carelessness, heedlessness and negligence which reasonably could be anticipated would lead to injury or damage."

9. "Products Hazard. The term "products hazard" means

"(1) goods or products manufactured, sold, handle or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured * * *;

"(2) operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be 'operations' within the meaning of this paragraph; * * * and (d) operations for which the classification stated in division (a) of the declarations specifically includes completed operations."

10. Assuming, without deciding, that it is valid under Utilities Ins. Co. v. Montgomery, 1940, 134 Tex. 640, 138 S.W.2d 1062,

defend the suit. This firm filed an answer on behalf of the Assured and undertook (and apparently still continues in) the defense of this case. The case was twice set for trial and during this time all depositions of several persons were taken in connection with the investigation of the facts in preparation for trial of the State Court suit. Just shortly before the second setting of the damage suit for trial during the month of October, the Insurer filed this declaratory judgment action in the Federal Court. The complaint precisely asserted nonliability, noncoverage on the ground that the State Court suit charged a claim of a kind within the "Products Hazard" definition which risks had been purposefully excluded. It sought a declaration that the Insurer had no duty to defend or pay any judgment.[11] The Federal District Court held with the Insurer and made the declaration precisely as sought.

◼ We are, of course, Erie-Texas bound both as to the substantive construction of the policy contract and as to the substantive nature of the test to determine whether the damage claim comes within the coverage thus construed. Unlike some where the lights are dim, United Services Life Ins. Co. v. Delaney, 5 Cir., 1964, 328 F.2d 483, or where the wick sputters from doubtful fuel, Kay v. Home Indem. Co., 5 Cir., 1964, 337 F.2d 898, 900, the lights here are bright, clear, and contemporary.

◼ As to coverage, we think the Supreme Court of Texas by its decision in Pan American Ins. Co. v. Cooper Butane Co., 1957, 157 Tex. 102, 300 S.W.2d 651, makes several things quite clear. First, the liability at issue is a matter of contract upon which contract principles apply. Second, policy provisions excluding liability for damages occurring after an assured's activity has ceased are perfectly valid. And third, the plain meaning of language comparable to that of "(2) Operations", note 9, supra, excludes occurrences taking place after operations have been completed. Although some distinctions exist between the Coop-

---

the reservation is remarkable in not subjecting the Insurer to a single promise. It provided:

"That the Company, or any of its representatives or attorneys may proceed to investigate the cause or circumstances under which an accident is alleged to have occurred at or near Perryton in the State of Texas on or about the 22nd day of January, 1961.

"That the Company, its representatives or attorneys aforesaid may investigate any and all things affecting their rights, directly or indirectly, present or remote, in connection with their Policy No. CGL 095743 issued to G & G Machine Works, et al of Borger, Texas, effective from the 3rd day of March, 1960.

"That in consideration of the trouble and expense in so doing, the Company, its representatives, agents, adjusters or attorneys may investigate, prepare for defense or actually defend me or us, without prejudice to the Company under the above policy, and still reserving unto the said Company all its rights and defenses under said policy of insurance as fully and completely as if the said Company had refused to take any steps whatever in the investigation and/or defense as above set out.

"All of the acts of all parties with respect to the matter herein referred to shall be deemed to be voluntary and to be done pursuant to the agreement herein expressed.

" * * *

"The intent and purpose of this agreement is to permit an impartial and full investigation and/or defense of all matters relating to said accident and the liability, if any, of the said Aetna Insurance Company, without incurring any admission of liability, and to preserve without estoppel, waiver, or forfeiture of any of the rights to any of the parties hereto. It is expressly understood, however, that I or we do not waive or release any rights that I or we might have under the said policy."

11. The prayer sought a "declaratory judgment declaring the rights, liability and status of the parties hereto, and declaring that [the Insurer] has no obligation to defend [the Assured] in said Cause No. 11205 * * *; and, further, that [Insurer] has no obligation to pay or discharge any judgments or any portion thereof which may be rendered in favor of said Bill Lee Schafer in the above described and numbered cause."

er policy and the one involved here,[12] we think that for our Erie purposes, the path to follow is plainly marked. And in any event other Texas writing Courts who also mark our way, Ford Motor Co. v. Mathis, 5 Cir., 1963, 322 F.2d 267, 269, give Cooper a broad reading to deny coverage under "Premises—Operations" for damages growing out of failures occurring away from premises owned, rented, or controlled by the assured and happening after operations had been completed since such liabilities are covered expressly under "Products—Completed Operations". Maryland Casualty Co. v. Knorpp, Tex.Civ.App., writ refused n. r. e., 1963, 370 S.W.2d 898; Pan American Ins. Co. v. White, Tex.Civ.App., no writ history, 1959, 321 S.W.2d 337.

▆ This means that as to coverage under "(2) Operations" we reject, as did the trial Court, the cases from other jurisdictions which in effect tie the "(2) Operations" coverage into some kind or character of a product which is manufactured, sold, handled or distributed as dealt with in "(1) Goods or Products" [13] of the policy definition (see note 9, supra). These cases adopt the theory that "(2) Operations" relates only to persons who are engaged in the business of selling, manufacturing, etc. some product. In other words (2) is not independ-

ent of (1). In view of this we find it unnecessary to pass on the Assured's argument labored so mightily that to "work on" goods such as the drill collar here does not amount to goods "handled" within the phrase "(1) Goods or Products Manufactured, Sold, *Handled*, or Distributed by the Named Insured * * *" in the Products Hazards definition, note 9, supra.

▆ Accepting this Texas construction as we must, the question then arises whether the damage claim asserted is within the coverage—perhaps more accurately, whether the claim is excluded from coverage. The big question has always been whether duty to defend is to be determined by what the damage claimant formally alleges or what the true facts are. On this, Texas has even more recently, but no less plainly, established the nature of the test to be applied. On January 27, 1965, in Heyden Newport Chemical Corp. v. Southern General Ins. Co., 1965, Tex., 387 S.W.2d 22, the Supreme Court of Texas gave its answer. Through Justice Hamilton it declared, "We think that in determining the duty of a liability insurance company to defend a lawsuit, the allegations of the complainant should be considered in the light of the policy provisions without reference to the truth or falsity of such

12. The Cooper case involved a Manufacturer's and Contractor's Scheduled Liability Policy. Hazards which could be insured were (1) Premises—Operations, (2) Elevators, (3) Independent Contractors, (4) Products, and (5) Contractual. Coverage A, however, was restricted to injuries or death "caused by accident and arising out of the 'hazards' defined" in contrast to unrestricted coverage here. See note 3, supra. The hazard "Premises—Operations" was defined as "The ownership, maintenance or use of the premises, and all operations which are necessary or incidental thereto," whereas "Premises—Operations" as such is nowhere defined in the instant policy. In Cooper coverage for accidents occurring after operations had "been completed or abandoned at the place of occurrence thereof and away from the premises owned, rented, or controlled by the Insured" was defined under "Products" liability.

Without intimating that the instant policy is no broader, we have pointed out earlier, see notes 5, 6 and 7 and accompanying text, supra, that the instant policy is structured to insure hazards specified.

13. The principal decision is that of Nielson v. Travelers Indem. Co., D.C.Iowa, 1959, 174 F.Supp. 648, op. adopted and affirmed, 8 Cir., 1960, 277 F.2d 455. That opinion discusses, relies on and adopts King v. Mason, La.App., 1957, 95 So.2d 705, affirmed, 1958, 234 La. 299, 99 So.2d 117; Kendrick v. Mason, 1958, 234 La. 271, 99 So.2d 108; McAllister v. Century Indem. Co. of Hartford, 1953, 24 N.J. Super. 289, 94 A.2d 345; affirmed, 1953, 12 N.J. 395, 97 A.2d 160; Heyward v. American Cas. Co. of Reading, Pa., D.C. 1955, 129 F.Supp. 4; and Hercules Co. v. Royal Indem. Co., D.D.C., 1959, 171 F. Supp. 746.

allegations and without reference to what the parties know or believe the true facts to be, or without reference to a legal determination thereof." 387 S.W.2d at 24.

■ Since initial duty to defend depends on the damage claim alleged, the Court recognizes that a problem is inescapably presented concerning the standard to be applied to the pleadings in the damage suit when matching it against the coverage prescribed in the policy. The Court answers that one plainly too. "While we have said above that the court is limited to a consideration of the allegations and the insurance policy in determining an insurer's duty to defend, we wish to point out that in considering such allegations a liberal interpretation of their meaning should be indulged." 387 S.W.2d at 26. The Court went on to cite with approval 50 A.L.R.2d 458, at 504, that " * * * in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy * * * such doubt will be resolved in insured's favor." 387 S.W. 2d at 26.

If the matter stopped there, our task would be an easy one of determining whether even under these loose, liberal standards [14] any theory is set forth which does not essentially charge that the Assured took the drill collar from the rig, took it to its shop where it was supposed to, but did not, work on it and thereafter returned it to the drilling rig where it broke because of defective servicing by the Assured. More than that, we could hold that the trial Judge was correct in concluding that such allegations affirma-

tively revealed a temporary custody of the drill collar by the Assured and a surrender of that custody back to the Drilling Company after the repair work had been, or was thought to have been, performed by the Assured.

■ But the Supreme Court of Texas did not stop there. In articulating this standard for determining the duty to defend, Justice Hamilton distinguishes the liabilities under Part I Coverage and Part II Defense.[15] With respect to payment of the claim, Part I Coverage A (see note 3, supra), the Court pointed out the "insurer does not pay because [the assured] is *alleged* to be legally responsible but because [the assured] has been *adjudicated* to be legally responsible." 387 S.W.2d at 25. (Emphasis supplied). The Court highlights the contrast when it goes on to state: "The coverage in Paragraph II is entirely different from the coverage in Paragraph I. No legal determination of ultimate liability is required before the insurer becomes obligated to defend the suit. That paragraph has reference to a suit seeking to recover damages that are covered in Paragraph I. * * * The coverage in Paragraph II does not depend on what the facts are or what might finally be determined to be the facts. It depends only on what the facts are alleged to be. To put it simply, Paragraph I protects all [assureds] from payment of damages they may be found legally obligated to pay under Paragraph I. Paragraph II protects the same parties against the expense of any suit seeking damages under Paragraph I." 387 S.W.2d at 25.

Although the parties seem not to have sensed its importance in the post argu-

---

14. It is not as bad as some make out.
 "Easy living, easy virtue, and easy pleading all have the nervous energy of youth, live in the moment, are streamlined for speed, give little thought to where they are going, do not worry about balancing the budget, are intolerant of restrictions, and hope for a Santa Clause to help them out of trouble while they are pursuing the rainbow. Instead of putting poor pleaders on relief, and bringing the pleading task to

their level, it is suggested we give more attention to the character building qualities of work and discipline." McCaskill, Easy Pleading, 35 Ill.L.Rev. 28, 40 (1940), in Hill, The Erie Doctrine and the Constitution, 55 N.W.L.Rev. 427, 577, n. 275.

15. The Court describes these as "paragraph I" and II. Each is substantially the same as Part I and II of the instant policy, see notes 3 and 4, supra.

ment materials including information on the Heyden opinion, we regard this distinction of vital importance in assaying the correctness of the declaratory judgment entered by the Federal District Judge. For here the Insurer sought and the Court entered a declaration holding that it had no obligation to defend or to pay any judgment.[16]

■ As the Supreme Court of Texas so plainly points out, there may be an obligation to defend where finally it turns out on the merits there is no obligation to pay because the facts turn out to be something other than alleged.[17] The contrary is just as apt to happen. The trial of a case may establish a legal liability which is clearly within the coverage of the policy and as to which the insurer has assumed a broad undertaking comparable to that in Part I here (see note 3, supra). The obligation to pay such claim would, of course, depend on whether other provisions of the policy, such as notice of suit, cooperation, and the like had been complied with. And it is also quite possible—especially in a case in which a declaration is sought and obtained that there is no duty to defend because of the peculiar allegations of the damage complaint—that in the damage suit there would have to be a clear fact finding by the trier of the fact, Judge [18] or jury [19] showing precisely an adjudication of facts bringing the claim within the coverage.

If this is an anomaly, it is hardly one of which the insurer can complain. After all it is the insurer's policy drafted wholly by it and intended to furnish broad and needed coverage to businessmen. And perhaps more important— certainly in the context of this case—it is this Insurer's choice to defend, as it did for awhile, or to stand aloof as it is now doing while it seeks an adjudication of its duty to defend.

Obviously there are some risks in either course. If, for example, this Insurer stands on its reservation agreement (note 10, supra), it can continue the defense. Subject to the restraints of honorable dealing, impeccable fairness to its own Assured (the nominal defendant) and the avoidance of self-serving actions which conflict with the interests of its Assured,[20] it may carry on a vigorous defense of its Assured to establish the true facts, hoping that the chips will fall to exonerate the Assured and hence the Insurer, and if not, then to exonerate the Insurer through the nature of the liability precisely adjudged against the Assured. On the other hand, the Insurer might do as it is now doing—stand aloof with or without a declaration of no duty to defend—and await the outcome of the damage suit hoping naturally that private counsel retained by the Assured will win outright or if not, the unsuccessful defense will delineate facts keeping the

---

16. See note 11, supra.

17. More frequently, the nonliability will be due to a successful defense on the merits. See, American Fid. & Cas. Co. v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co., 5 Cir., 1960, 280 F.2d 453; National Sur. Corp. v. Wells, 5 Cir., 1961, 287 F.2d 102; Burton v. State Farm Mut. Auto. Ins. Co., 5 Cir., 1964, 335 F. 2d 317.

18. See Texas Rule of Civil Procedure 296 comparable to F.R.Civ.P. 52(a) requiring findings of fact and conclusions of law.

19. Absent consent of all parties, jury submission in Texas must be by special issues only. As a result of literally thousands of appellate decisions on this fruitful subject matter, a highly refined, complex, and some think unrealistic, system exists requiring submission of minute separate, independent fact or legal-fact questions to the jury. See, e. g., Tex.R. Civ.P. 277, 279; Hodges, Special Issue Submission in Texas (1958). Some who have worked under both systems consider F.R.Civ.P. 49(a) which blends a general charge with special interrogatories an improvement. See Tugwell v. A. F. Klaveness & Co., 5 Cir., 1963, 320 F.2d 866, 868 n. 2.

20. See the opinion of Chief Justice Murray for the San Antonio Court of Civil Appeals in Steel Erection Co., Inc. v. Travelers Indem. Co., 1965, 392 S.W.2d 713, citing with approval, Shehee—Ford Wagon & Harness Co. v. Continental Cas. Co., La.App., 1936, 170 So. 249, 251.

judgment from being within the coverage.

But if these risks exist, they are again the creature of the one who prescribed the contract and then sold its benefits to one in apparent need.

Occasionally, of course, declaratory judgment in the State or Federal Court may solve the riddle. But wonderful as is that device, there are limitations on its use by Federal Courts lest we engage in interesting, but academic, declarations about things that may never be. Byers v. Byers, 5 Cir., 1958, 254 F.2d 205, 209; American Fidelity & Cas. Co. v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co., 5 Cir., 1960, 280 F.2d 453, 461.

That is certainly the case here. Technically, of course, we might hold that the trial Court's declaration of non-liability for any judgment to be entered was tied into the case as framed by the present State Court petition to which the Federal Court could alone look in determining duty to defend. But there are too many variables to allow the Federal Court to adjudge ultimate liabilities on that basis. Not the least of these is the necessity of the Federal Court assuming that under the present petition and State Court procedure, *no* state of facts could be proved which would (a) impose liability on the Assured and (b) simultaneously come within Part I Coverage A.[21] But we have enough difficulty divining just what limitation is now afforded by pleadings in Federal Trial Courts[22] without speculating on State practice. More than that, there is always the possibility of the damage suit plaintiff filing amended pleadings,[23] the only intrinsic restriction being the problem of relation back to avoid the statute of limitations[24] and giving such notice to the insurer as required by the policy in the light of a refusal to defend.[25]

■ Putting the question of State Court pleadings to one side, the record certainly did not permit a determination as a matter of law that under no possible state of facts could a claim within Part I Coverage A be made out. As to this, the essential ingredient of summary judgment—no genuine issue as to a material fact—was lacking. F.R.Civ.P. 56(c).

■ Nor, on remand, do we think it appropriate for the Federal Court to hear this part of the claim in advance of the State Court trial. Of course, many cases can be supposed where disposing of duty to defend permits like determination of judgment liability.[26] But here it is quite possible that the Assured may be held liable. Whether insurance is available depends on the nature of any such imposed liability. To determine that, means a full trial of the damage claim on the merits.

A moment's reflection will demonstrate that the trial of the merits of the underlying damage claim should be held in the

---

21. The liberality with which the damage suit complaint is construed is markedly illustrated in Chief Justice Bell's recent opinion in Sewer Constructors, Inc. v. Employers Cas. Co., 1965, Tex.Civ.App., 388 S.W.2d 20 [Feb. 4, 1965].

22. See, e.g., F.R.Civ.P. 15, 16, 54(b).

23. As a matter of fact this has been done. Whether it has changed the theory, we do not determine. The amended State Court petition was not before the Federal Trial Court when making its declaration.

24. See Tex. Vernon's Civ.Stat.Ann. art. 5539b: cf. F.R.Civ.P. 15(c).

25. Although it might first appear that refusal to defend would make further notice superfluous and therefore not required, cf. United Services Auto Ass'n v. Russom, 5 Cir., 1957, 241 F.2d 296, 301; National Surety Corp. v. Wells, 5 Cir., 1961, 287 F.2d 102, a Court might well hold that successive notice was required. The assured, as well as the insurer, must take cognizance of distinct Part I and II liabilities.

26. E.g., scope of employment of an alleged corporate servant, permission to use the vehicle, nonpayment of premium, cancellation of policy, breach of policy requirement of notice of occurrence, claim, suit, cooperation, status of claimant or vacarious assured under employee or cross employee exclusion, and the like.

State Court, not in the Federal Court as a prelude to negative potential liability. There is, first, the need for husbanding precious judicial time—a factor having a strong hold on the Federal Judge in exercising the inherent discretion in granting declaratory relief. Two trials are not needed where one would do. More important, Part I obligation to pay the judgment depends on liability being imposed by law. If the Federal Court were to conduct what amounts to a full dress trial [27] on the liability phases of the damage claim, it might, or might be required to, conclude that no claim within the coverage was made out, and on that enter a declaration of (a) no duty to defend and (b) no obligation to pay.[28] And yet, in a subsequent trial of the damage suit in the State Court, a jury right find precise facts, the legal effect of which would be to (a) cast the Assured for liability and (b) bring the occurrence within Part I coverage. But at that stage, of course, with the earlier Federal Court declaration the Assured would be without insurance and res judicata would cut off forever the opportunity to demand compliance by the Insurer of its policy promise to "pay * * * all sums which the insured shall become legally obligated to pay" (note 3, supra).[29]

And, finally, in the light of this particular record, we think that while it was permissible to make the declaration of no duty to defend the suit as disclosed by the original damage petition, no purpose is served by the Federal Court attempting to declare whether there is a Part II duty to defend as successive amended petitions are filed. There is, for example, a strong suggestion in this record that the drill collar was never picked up by the Assured at all. If that is judicially determined, it might mean no liability by the Assured whatsoever. On the other hand, with concepts broadening as they are in Texas,[30] we cannot rule out the possibility of a judgment being rendered on a theory akin to products liability for failure to pick up and repair after a promise to do so under circumstances which would lead the Drilling Contractor's employees to assume that the service work had been done by the Assured. On that state of legal-fact, the question would then arise whether that would be a "completed operation" as defined in "Products Hazard" (note 9, supra). Without deciding that, or even intimating what we might hold, some comments are appropriate. Viewed as a physical fact, operations never commenced at all could hardly be "completed." Nor could they be regarded as "improperly or defectively performed" if never performed at all. Similarly, it is odd to describe this as operations which "have been * * * abandoned." On the other hand, a strong argument could be made that in the light of the entire policy and the exclusionary definitions such asserted liability arises subsequent to the time activities either were, or should have been, carried on and consequently are not within the coverage.

27. The Assured sought, but the Federal Court denied, a motion for production of the investigative file in the hands of trial counsel appointed by the Insurer and ostensibly defending the Assured under reservation of rights in the State Court. As this has no significance in our disposition, we make no holding on the point. If Part I liability is inquired into, obviously the Assured is entitled to this information. See Steel Erection Co. v. Travelers Indem. Co., Tex.Civ.App., 1965, 392 S.W.2d 713. Cf. Chitty v. State Farm Mut. Auto. Ins. Co., E.D.S.C., 1964, 36 F.R.D. 37, 40.

28. Although the State Court plaintiff is now an intervenor in the Federal Court declaratory suit, it is not likely that the Federal trial Judge, exercising the discretion inherent in declaratory relief, would deprive the damage plaintiff of his choice of the State Forum for the trial of his case vis-a-vis the Assured.

29. In Burton v. State Farm Mut. Auto. Ins. Co., 5 Cir., 1964, 335 F.2d 317, 325, we required affirmative declaratory relief to avoid whipsawing the assured between Federal Court declarations of nonliability which were res judicata and outstanding State Court judgments imposing liability for a claim within the policy coverage.

30. See Putman v. Erie City Mfg. Co., 5 Cir., 1964, 338 F.2d 911.

Whether answering that question would be difficult or not, it is an answer that ought not to be made with the imprimatur of law until such time as it is reasonably certain that the precise issue is presented. Obviously, we ought not to express opinions which may turn out to be academic only relating to situations that never will be. American Fid. & Cas. Co. v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co., 5 Cir., 1960, 280 F.2d 453; Corsican Prods. v. Pitchess, 9 Cir., 1964, 338 F.2d 441.

The result is that the decree is reversed as to Part I liability for payment of judgments. The decree is affirmed as to Part II duty to defend the State Court suit as set forth in the original complaint only. As modified, the case is remanded for further and not inconsistent proceedings.

Reversed in part, affirmed in part, modified and remanded.