**A. C. GREEN, Jr., et al., Appellants,**

**v.**

**AETNA INSURANCE COMPANY,**
Appellee.

**No. 25094.**

United States Court of Appeals
Fifth Circuit.

July 8, 1968.

Jack Banner, Banner & McIntosh, Wichita Falls, Tex., for appellants.

David Bland, Houston, Tex., for appellee.

Before GOLDBERG and CLAYTON, Circuit Judges, and HANNAY, District Judge

CLAYTON, Circuit Judge:

This case is here for the second time.[1] On its first appearance, we held in sum that under the complaint as then made in a declaratory action and under the policy of general liability insurance issued by Aetna Insurance Company with Rotary Tool and Joint Company[2] as named insured, Aetna had no duty to defend a pending personal injury damage suit (as then made by the pleadings)[3] by Billy Lee Schafer against Rotary, but we reversed a holding by the district court declaring that there was no duty on the part of Aetna to pay any judgment obtained against its insured, since the record did not then permit a determination as a matter of law that under no possible state of facts could a claim be maintained against the insured within the coverage of the policy.[4] It was then this court's view that the district court should not declare the rights of the parties with respect to liability for payment of judgment until after the tort case had been adjudicated in the state courts, and

the district court stayed its hand until after the state court trial.

There was a final judgment in favor of Billy Lee Schafer against Rotary for $558,866 in state court; Schafer had intervened in the case sub judice, and there was then a trial without a jury in the district court.[5] Findings of fact and conclusions of law were filed, and judgment entered declaring no liability on the part of Aetna to pay the Schafer judgment. Only the Intervenor, Schafer, appeals.

Appellant makes a multipronged attack on the actions of the district court, but the main thrust of his argument is that the reworking of the "pin" or "male" end of a drill collar is a separate and an independent operation from reworking the "box" or "female" end.[6] He argues that inasmuch as the box end of the drill collar which was involved in the injury to Schafer had not been worked upon that "operations," within the language of the policy, could not be completed nor abandoned.

For present purposes, we may accept as undisputed in the record facts necessary to determine the one question of coverage. Their essence is that in accordance with an oral agreement Rotary customarily did repair · work for Luke Grace Drilling Company, and under this agreement, Rotary undertook to repair for Grace six drill collars. Such collars have a pin end and a box end. Grace expected Rotary to repair both ends, and Rotary intended to do so. Rotary repaired all six pin ends and three of the box ends. It did nothing to the other three box ends. The drill collars were

1. Green v. Aetna Insurance Company, 349 F.2d 919 (5 Cir. 1965).

2. This is a partnership.

3. The precise language of our opinion narrowly confining our action with respect to the obligation to defend is at 349 F. 2d 928 as follows:
 The decree is confirmed as to Part II duty to defend the State Court suit *as set forth in the original complaint only*. (Emphasis added.)

4. The district court had entered a summary judgment declaring that Aetna had no duty to defend Rotary in the Schafer suit and had no duty to pay any judgment which Schafer might obtain. Rule 56, Federal Rules of Civil Procedure.

5. The district judge considered the entire record in the Texas court tort suit which is not a part of the printed record here.

6. References hereafter will be to pin and box ends.

returned to Grace without notice or knowledge of Rotary's failure to do the complete job which Grace had expected. One of the unrepaired box ends malfunctioned, causing the injuries to Schafer. This occurred on premises which were in no way connected with Rotary.

Exclusions from the coverage, which may be relevant here, are:

*First:* On one of the schedules, there appears:

"(d) Products (Including Completed Operations)," there was typed "NONE COVERED HEREUNDER."

*Second:* Where dollar amounts of coverage were inserted, on the line for "Aggregate Products," there was typed "NOT COVERED."

*Third:* There was an endorsement reading:

"Exclusion of Products Hazard

" * * * It is agreed that this policy does not apply to the products hazard as defined therein."

*Fourth:* The relevant parts of the policy language defining products hazard is:

"Products Hazard. The term 'products hazard' means

"(1) goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured * * *;

"(2) operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; * * *."

When the six drill collars were placed in Rotary's hands, Grace expected Rotary to repair both ends, and Rotary intended to do so, according to the Grace-Rotary agreement. The Schafer accident occurred away from premises owned, rented or controlled by Rotary, and after Rotary had relinquished possession of the drill collars. When the drill collars left Rotary, one or more or all of the situations following existed:

1) Rotary had not completed the repair work ("operation") as had been contemplated and, thus, had abandoned it.[7]

2) Rotary's repair work had been "improperly or defectively performed," since Rotary had not done all it was required to do by the Grace-Rotary agreement. Since, under the language of the policy, "operations shall *not be deemed incomplete because improperly or defectively performed,"* this would be a "completed" operation, under the language of the policy. (Emphasis added.)[7]

3) Rotary had not done all that was expected of it under the Grace-Rotary agreement and, thus, to fulfill their obligations thereunder, Grace could have required Rotary to undertake "further operations * * * pursuant to an agreement * * *".[7]

With the foregoing being so, under the views afterward expressed herein, it is irrelevant whether the repairs to the drill collars were two operations, as contended by appellant, or one, as was probable.

The allegations of negligence in the petition in the tort case which we held did not create on Aetna's part the duty to defend were these:

That Rotary Tool and Joint Company and its owners, acting by and through their employees or agents was guilty of negligence in failing to properly inspect the drill collar in question, in failing to repair the same, in declaring

---

7. The district court specifically found this to be the case.

the same was in condition for use, in warranting that such joint would be properly repaired and in failing to warn that in truth and in fact no proper repairs had been made on such drill collar and each and every one of the above acts, individually or collectively constituted carelessness, heedlessness and negligence which reasonably could be anticipated would lead to injury or damage.

Responding to special issues in the tort cases, the jury found that Rotary failed to *repair* the box end of the drill collar; that it failed to *warn* that this had not been done and that it *failed to inspect* that end of the drill collar. The jury thus found *the existence of the very facts which we held did not create the duty to defend.* These are facts which we must now accept. This being so, it possibly might be sufficient for us to say that it would be inconsistent and against reason to hold that a duty to pay now exists on precise facts which we have held created no duty to defend. However, to avoid muddying the clear exposition by Justice Hamilton[8] with respect to the distinction between the duty to defend and the duty to pay, Heyden Newport Chemical Corp. v. Southern General Insurance Co., 387 S.W. 2d 22 (1965),[9] we should go further. The *allegations* upon which we held there was no duty to defend have now become *facts* upon which we hold there is no duty resting with Aetna to pay the Schafer judgment.

 We are *Erie*[10] bound to follow Texas law which on the facts here is not difficult to ascertain. We rely principally upon two Texas cases to support our view. They are Pan American Insurance Company v. Cooper Butane Company, 157 Tex. 102, 300 S.W.2d 651 (1957), and Maryland Casualty Company v. Knorpp, 370 S.W.2d 898 (Tex. Civ.App.1963) (writ ref'd n. r. e.). We rely also on our earlier opinion on the first appearance of this case here. (Footnote 1, supra.) See also, Pan American Insurance Company v. White, no writ history, 321 S.W.2d 337 (Tex.Civ. App.1959).

We first outline the analysis of *Cooper* as it was articulated by Judge Brown in writing for this court in the earlier appearance here of the case sub judice:

1) Liability under the policy "is a matter of contract upon which contract principles apply".

2) "Policy provisions excluding liability for damages occurring after an assured's activity has ceased are perfectly valid."

3) The plain meaning of language comparable to that of "(2) operations" [of the policy in suit, supra] "excludes occurrences taking place after operations have been completed".

4) "Premises—Operations" hazard does not encompass "damages growing out of failures occurring away from premises owned, rented, or controlled by the assured and happening after operations have been completed * * *."

5) "Operations" need not be tied to a product which is manufactured, sold, handled or distributed in order to make the "completed operations" section of the Products Liability hazard operative.

While it is true that the Texas Supreme Court in *Cooper* dealt only with questions of whether "operations" had been "completed," that court recognized, we think clearly, that if the operations had been "abandoned," the same result would be reached. It stated:

> If the insured had wished coverage for liability for damages growing out of accidents occurring *after operations* had "been completed or *abandoned* at the place of occurrence thereof and away from premises owned, rented or controlled by the insured" it should

---

8. Of the Texas Supreme Court.

9. At page 25.

10. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**618**

have purchased coverage against hazard No. 4, "Products". It did not do so.[11]

*Knorpp,* supra, adds strength to our views with respect to what Texas courts have held. The court there held "Division 4—Products—Completed Operations" has to do with liability after relinquishment for use (370 S.W.2d p. 903). We quote further from that opinion:

> Additionally, the separate categories being mutually exclusive, coverage is not afforded under "Division 1—Premises—Operations" *if the basis upon which liability is asserted occurred after operations were relinquished for use* because such coverage under the policy is afforded under "Division 4—Products—Completed Operations," a category not purchased. Had the building not been relinquished for use the accident would not have occurred because storage would not have begun in the building. (p. 904) (Emphasis supplied.)
>
> * * * * * *
>
> * * * a careful study of the form and design of the policy reveals that it was written to cover, among others, two particular situations. First, that which arises when an accident occurs while the assured is engaged in the actual work of the business for which he has purchased coverage. Having purchased coverage under "Division 1—Premises—Operations" appellees would have had coverage thereunder for an accident up to the point of relinquishment for use. The second situation is when an accident arises after the assured has completed his work and due to some negligent operation on his part damages are suffered by a third party. If the assured had purchased coverage under "Division 4—Products—Completed Operations" he would have had protection for such a situation, * * *. (p. 904)

* * * * * *

In this case the building had been relinquished by appellees for use, whether rightfully or wrongfully. The Third Party was using it when it collapsed from what Third Party Plaintiff alleged was original negligent erection of the building. Thus, they would have been covered had they purchased coverage under "Division 4," but since it had been relinquished for use they did not have coverage under "Division 1—Premises—Operations". (p. 904)

It is certain, as we have said, that the drill collar with which Schafer was injured had been "relinquished for use" at the time of the accident.

On the merits of appellant's case, we are unable to say that Rotary was covered with respect to the Schafer injury. On the contrary, we are of the firm view that the undisputed facts here show that such coverage was excluded by the language of the policy. Rotary did not elect to buy the type of coverage to which Schafer may now resort.

However, this does not altogether end the case. Mention should be made that appellant attacks five of the findings of fact by the district court as being "global" and without evidential support in the record. In the same light, he argues that it was error for the district court not to enter findings which were requested by him. Suffice it to say, that we are of the view that the findings of fact of the district court were couched in proper language and were responsive to the issues framed by the pleadings, Weber v. McKee, 215 F.2d 447 (5 Cir. 1954), 46 C.J.S. Insurance § 1387, and are based on factual choices open to the district judge. Hence, we are unable to say that these findings of fact are "clearly erroneous," and thus, they may "not be set aside". Rule 52, Federal Rules of Civil Procedure; see Standard Dredging Corporation v. Texaco, Inc.,

---

11. The phrase, "after operations," is emphasized by that court. Other emphasis in this quotation is supplied by us.

5 Cir. 1968, 395 F.2d 744 [June 10, 1968]. This is especially true, since we do not have before us all of the record which was considered by the district court. (Footnote 5, supra.) It is the burden of the appellant under Federal Rule of Civil Procedure 75(b) to "include in the record a transcript of all evidence relevant to such finding * * *." "if [he] intends to urge on appeal that a finding * * * is unsupported by the evidence or contrary to the evidence * * *". See also, Smith v. United States, 287 F.2d 299 (5 Cir. 1961); Horton v. United States Steel, 286 F.2d 710–713 (5 Cir. 1961) and Rea Const. Co. v. B. B. McCormick and Son, 255 F.2d 257 (5 Cir. 1958).

Additionally, appellant urges that the language of the policy here involved is ambiguous and, thus, that he is entitled to a favorable construction of its "ambiguous" language. The short answer is that we held, on the first appearance of this case here (Footnote 1, supra), that the Supreme Court of Texas in Cooper, supra, had made policies of this type quite clear. The Supreme Court of Texas in *Cooper* reversed a court of civil appeals opinion which held a similar policy to be ambiguous, and in *Knorpp*, supra, the court held that the standard form Comprehensive General Liability policy was not ambiguous, even though it was not prepared with a view of "relaxing the mind". The effect of our holding on prior appeal, when we affirmed that part of the declaratory judgment decreeing that Aetna had no duty to defend, was to hold the policy not to be ambiguous. It would now be absurd, in determining the related duty of paying the judgment, to hold it to be ambiguous. It is also significant that on that prior appeal this court expressly and specifically rejected most of the case authorities cited to this point by appellant. See Footnote 13, Green v. Aetna Insurance Company, 349 F.2d 919, 923 (5 Cir. 1965).

■ One tag end remains. Appellant boldly states that Aetna has waived its right to contest coverage and is estopped from asserting no coverage. This contention is without merit and fails to take into account the fact that a "reservation agreement" was entered into immediately after suit was filed in the state court tort action when the nature of Schafer's allegations first became known to Aetna. This agreement is shown in substance at Footnote 10 of our prior opinion.[12] Appellant makes no contention that it is invalid. Hence, we assume it to be valid. Home Insurance Company v. Lake Dallas Gin Company, 127 Tex. 479, 93 S.W.2d 388 (Tex.Civ.App.1936), and New Amsterdam Casualty Company v. Hamblen, 144 Tex. 306, 190 S.W.2d 56 (Tex.Civ.App.1945). After the holding here that Aetna had no duty to defend, a supplementary reservation agreement was executed which obligated Aetna to defend the state court case through trial in the district court. This, Aetna did. Utilities Insurance Company v. Montgomery, 134 Tex. 640, 138 S.W.2d 1062. To close the chapter and, thus, the book, the district court found that in the defense of the state court tort case every standard of ethics and care were observed.

The action of the district court in entering judgment declaring that Aetna was under no contractual duty to pay the Schafer judgment was right, and it should be, and is,

Affirmed.

12. Green v. Aetna Insurance Company, 349 F.2d 919, 921–922 (5 Cir. 1965).