PAN AMERICAN INSURANCE COMPANY V. COOPER BUTANE COMPANY ET AL.

No. A-5961. Decided April 3, 1957.
(300 S.W. Second Series 601)

*Allen Clark,* of Greenville, for petitioner.

*B. Truman Ratliff,* of Cooper, and *Hardy Moore,* of Paris, for respondents.

MR. JUSTICE CALVERT delivered the opinion of the Court.

This is a suit by Pan American Insurance Company, petitioner, for a declaratory judgment. Its purpose is to establish that a policy of insurance sold and issued to respondent, Cooper Butane Company, does not obligate petitioner to pay a judgment for damages if one is obtained against Cooper Butane Company by the other respondents who are the statutory wrongful death beneficiaries of Carolyn Ann McCombs and Elmer McCombs, both deceased.

The trial court rendered a declaratory judgment absolving petitioner of liability. The Court of Civil Appeals reversed the judgment of the trial court and rendered judgment that petitioner take nothing by its suit. 290 S.W. 2d 919. The holding of the Court of Civil Appeals is that under the terms and provisions of the insurance policy petitioner is obligated to pay on behalf of the insured any sums, within the limits of the policy, which the other respondents may recover in suits for damages now on file against the insured. We reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court.

■ The insurance contract was written on a "Manufacturers' and Contractors' Schedule Liability Policy" form. The form contained two "Coverages," "A. Bodily Injury Liability" and "B. Property Damage Liability," either or both of which could be purchased against any one or all of five "Hazards," i.e., "1. Premises-Operations," "2. Elevators," "3. Independent Contractors," "4. Products," and "5. Contractual." Cooper Butane Company purchased both coverages against the single hazard "Premises-Operations." Only Coverage A is involved in this case.

By Coverage A petitioner agreed to pay on behalf of Cooper Butane Company all sums it became obligated to pay by reason of liability imposed upon it by law as damages "because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the hazards" defined. The hazard, "Premises-Operations," against which the coverage was purchased is defined as follows: "The ownership, maintenance or use of the premises, and all operations which are necessary or incidental thereto." Other policy definitions and provisions include within the hazard, "Premises-Operations," the property of others while used by the insured for carrying on its business of installing, servicing and repairing liquefied petroleum gas systems. Still other policy provisions limit liability under the "Premises-Operations" hazard to damages for injuries resulting from accidents occurring *before operations* are completed. If the insured

had wished coverage for liability for damages growing out of accidents occurring *after operations* had "been completed or abandoned at the place of occurrence thereof and away from premises owned, rented or controlled by the insured" it should have purchased coverage against hazard No. 4, "Products." It did not do so.

Cooper Butane Company is a partnership with R. C. Harber as the managing partner. The partnership was in the liquefied petroleum gas distribution business, including the business of installing, servicing and repairing liquefied petroleum gas systems, piping and equipment. One of its regular customers was one John McCombs. On May 11, 1954 Leonard Allen, a Cooper Butane Company employee, filled the butane tank at the residence of John McCombs. He discovered that the filter valve on the tank was out of repair, permitting the escape of gas, and he sought to repair it by "jiggling" it, but failed. On June 24th Allen again filled the tank and on this occasion replaced the valve. A few days later McCombs reported to Allen that the gas was still escaping and Allen inserted a bushing and replaced the valve when he filled the tank on July 26th. The new valve stopped the leak and no further repairs were needed. Allen's repair work had not been inspected by Harber at the time the events next related transpired.

On July 30, 1954 Carolyn Ann McCombs, minor daughter of John McCombs, was lowered by a rope into a cistern on the property of John McCombs for the purpose of cleaning out the cistern. When she reached the bottom of the cistern she fell forward and died. A few minutes later Elmer McCombs, uncle of Carolyn Ann, was lowered by a rope into the cistern to recover her body. As he reached the bottom he died immediately. After the filing of this suit the statutory wrongful death beneficiaries of Carolyn Ann and Elmer McCombs filed suits against Cooper Butane Company and the individual members of the partnership seeking a recovery of damages upon allegations of negligence on the part of an employee which permitted butane gas to escape from the tank on the McCombs premises, which gas, it is alleged, accumulated in the bottom of the cistern and caused the deaths of Carolyn Ann and Elmer McCombs.

The policy provisions above analyzed and the events just related pose the ultimate question to be decided: At the time of the deaths of Carolyn Ann and Elmer McCombs on July 30th, were operations by Cooper Butane Company on the McCombs premises completed? If they were not completed petitioner will

be obligated under the terms of its policy to pay any damage recovered against Cooper Butane Company. If they were completed petitioner will not be obligated to pay such damages because the policy does not provide coverage in that event. The answer to the stated question must turn on the answer to a subsidiary question: Was an inspection by Harber of Allen's work, unmade at the time of the accident, essential to the completion of the repair operation?

Allen and Harber were the only witnesses whose testimony was offered on the trial of the case. Allen testified that when he left the McCombs premises on July 26th the filter valve on the butane tank was perfectly and permanently fixed and was working all right, and that the job had been completed. Harber testified that it was his custom and practice to inspect all repair work done by his employees and that on August 2nd, a few days after the fatal accidents, he did, in fact, make an inspection of the repair work done by Allen on July 26th. He further testified that his inspection disclosed that the valve was working entirely satisfactorily, that the work done by Allen was wholly complete and that nothing remained to be done.

In response to a request by Cooper Butane Company the trial judge filed findings of fact and conclusions of law. He found that Allen, on July 26th, "properly and permanently repaired the valve and the tank;" that "there was no necessity for him [Allen] or any other person connected with Cooper Butane Company, Ltd., to return to the premises of John McCombs for any purpose;" that the repairs made by Allen "were properly and permanently made and that nothing more remained to be done to the tank;" that when Allen completed the repairs he "made an inspection and found that there were no leaks in the filter valve and that no further inspection was needed or necessary;" that "the work on the tank having been fully completely, perfectly and permanently performed, that an inspection or check of the tank was (1) not a part of the work, (2) and would and could have added nothing to the work which was already properly and permanently done."

Before the trial court's judgment may be overturned we must be able to say, as a matter of law, that an inspection by Harber of Allen's work was a necessary part of the repair operation. Cooper Butane Company would have us hold that the trial judge was required to accept as true the testimony of Harber, an interested witness, that it was his practice to inspect all work of subordinates, and then would have us translate that holding into

a further holding, as a matter of law, that a subsequent inspection by Harber was, within the meaning of the insurance contract, an essential part of the operation of repairing and filling the butane tank on July 26th. That we cannot do.

Even if the testimony of Harber were accepted as true and as establishing that Harber regarded an inspection by him as an integral part of the work done by his employees, we yet could not hold that an inspection became an integral part of the repair operation within the terms of the insurance contract. The rights of the parties rest in contract. The policy does not define "operations," or "completion of operations," or otherwise prescribe a test for determining when an operation is completed. It provides only that "operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to a service or maintenance agreement." There is no evidence that it is an established and rcognized custom in the type of business operated by Cooper Butane Company that all work of subordinates must be inspected by the owners of the business as a part of the work undertaken, so that we may not say that Cooper Butane Company and Mc-Combs or Cooper Butane Company and petitioner contracted with reference to such a custom. There is no evidence that either petitioner or McCombs was informed or otherwise had notice of the practice of Harber of inspecting the work of subordinates as a part of operations on the premises of customers. Absent such notice petitioner can hardly be held to have contracted with reference to the practice.

The cases cited by the parties are not greatly helpful. We had occasion to analyze a policy of insurance of essentially similar terms in Lloyds Casualty Insurer v. McCrary, 149 Texas 172, 229 S.W. 2d 605. In that case the insured installed a butane gas system with a defective pressure gauge and defective valves and fittings, and left the premises knowing of the defects and intending to return to repair and correct them. A fire occurred and damage was done before the insured returned. We held that the installation operation was not completed at the time of the accident and that the insurer was liable on the policy. A similar holding was made in a similar fact situation by the Court of Appeals, 5th Circuit, in Boutwell v. Employers' Liability Assurance Corp., 175 F. 2d 597. In the McCrary case we recognized that if the insured "had completed or abandoned the installation, a different situation would be presented."

In Berger Bros. Electric Motors v. New Amsterdam Casualty

Co., 293 N.Y. 523, 58 N.E. 2d 717, 156 A.L.R. 1281, it was held that an accident arising out of defective workmanship but occurring after the workman had completed his work and had left the premises was not within a coverage substantially the same as the coverage in the instant policy. Similar holdings were made in Baker v. Maryland Casualty Co., 73 R.I. 411, 56 A. 2d 920, Crook v. Kalamazoo Sales and Service (R.I.), 110 A. 2d 266, Standard Acc. Ins. Co. v. Roberts, 132 F. 2d 794, 8th Circuit, and Hardware Mutual Casualty Co. v. Bloomberg (Ohio), 135 N.E. 2d 698.

Cooper Butane Company relies, principally, on General Cas. Co. of Wisconsin v. Larson, 196 F. 2d 170, 8th Circuit. The coverage in the policy purchased in that case was substantially the same as the coverage in the policy in the instant case. The insured was employed to "clean and service" a furnace and oil burner. An employee of the insured cleaned the furnace and oil burner on August 3, 1948. Because of defective workmanship an accident occurred on August 7th, before the insured had inspected and serviced the fixtures. The court held that operations were not completed, saying: "Larson was employed by Clinite to clean and service the furnace and oil burner. Strand had 'finished' only the 'certain' part of the work which he was sent to the premises to do, namely, to 'clean' the furnace, and that was all he attempted to do. Larson was yet to 'inspect and service' the oil burner. On this point the trial court found that '* * * the testimony in the Home Insurance Company case [wherein liability of the insured was determined] unmistakably establishes that the work was not completed when the accident occurred'; and the evidence abundantly supports that finding." That case differs from the case before us in that in the instant case there is no evidence of an agreement between Cooper Butane Company and McCombs, express or implied, that Harber would inspect Allen's work. Moreover, in the instant case the trial court found that the work was completed when the accident occurred.

■ In the absence of evidence to the contrary we must hold that the parties to the contract intended that the word "operations" be given its usual and accepted meaning. 10 Texas Jur. 301, Contracts, Section 172. One of the meanings of the word "operation" given by Webster's New International Dictionary is: "A doing or performing action; work; a deed." The same authority defines the verb "operate" as "To perform a work or labor; * * * to work * * *." It seems quite clear to us that in contracting with reference to operations in installing, servicing

and repairing liquefied petroleum gas systems the parties used the word "operations" as a synonym of the word "work." It follows that installation, servicing or repair operations covered by the policy were completed, within the contemplation of the parties, when the work necessary to a particular installation, servicing or repair job was done. We certainly cannot say, as a matter of law, that an inspection and approval of the work was an integral part of the work itself.

■ The coverage available to the insured was against certain "hazards." A "hazard" is "an unforeseen disaster or accident. * * * Risk; danger; peril." Webster's New International Dictionary. The risk, danger or peril of a disaster or an accident during the progress of a work operation on the premises of another, for which liability may be imposed on the insured, arises out of the work itself. Under our interpretation of the policy the insured would be protected against those hazards by purchase of coverage against hazard 1, "Premises-Operations." The risk, danger or peril of a disaster or an accident after a work operation is completed on the premises of another, for which liability may be imposed on the insured, arises out of defective or negligent workmanship. The insured would be protected against those hazards by purchase of coverage against hazard 4, "Products." There is little, if any, risk, danger or peril of a disaster or an accident arising out of the simple act of making an inspection, and little reason, therefore, for holding that the parties intended the policy coverage to extend thereto.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

Opinion delivered April 3, 1957.