Curtis HARGIS et al., Appellants,

v.

MARYLAND AMERICAN GENERAL INSURANCE COMPANY, Appellee.

No. 5159.

Court of Civil Appeals of Texas, Eastland.

June 22, 1978.

Rehearing Denied July 13, 1978.

Bob Roberts, Byrd, Davis, Eisenberg & Clark, Austin, E. Barham Bratton, Austin, for appellants.

Royal H. Brin, Jr., Strasburger & Price, Dallas, for appellee.

BRADBURY, Justice.

This is an appeal from the granting of a summary judgment favoring Maryland American General Insurance Company against Curtis Hargis, Andrew W. Lucas, and Dallas Hermetic Company, Inc. We affirm.

Hargis and Lucas, as employees of Frymire Engineering Company, were injured May 22, 1968, when an air conditioning unit on which they were working exploded. About one year previous, the motor in the unit had been rewound by Hermetic. Hargis and Lucas sued Hermetic and other defendants and subsequently settled with all defendants except Hermetic. Judgments were then recovered for Lucas in the sum of $450,000 and for Hargis, $250,000 against Hermetic. They executed identical covenants not to execute against Hermetic, and in these cases, Maryland, insurance carrier for Hermetic, refused to defend. When the judgments became final, suit was filed by Hermetic, Hargis and Lucas against Maryland to recover the amounts of judgments, interest and attorney's fees.

■ In a summary judgment case, the judgment should be granted and if granted, should be affirmed, if the record establishes a right thereto as a matter of law. *Gibbs v. General Motors Corporation*, 450 S.W.2d 827 (Tex.1970).

Maryland's motion for summary judgment contended that as a matter of law it was not obligated to defend Hermetic because the policy exclusions relating to "completed operations hazard" and "products hazard" were applicable.

Such exceptions are as follows:

(1) Completed Operations

"Completed Operations hazard includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the

named insured. 'Operations' include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed;

(2) when all operations to be performed by or on behalf of the named insured at the site of the operation have been completed; or

(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or sub-contractor engaged in performing operations for a principal as part of the same project. Operations which may require further service or maintenance work, or correction, repair, or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed."

(2) Products Hazard

"Products hazard is defined as follows:

Products hazard includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquishment to others."

In *Travelers Insurance Company v. Chicago Bridge & Iron Company*, 442 S.W.2d 888 (Tex.Civ.App.—Houston (1st Dist.) 1969, writ ref. n. r. e.), the court stated: ". . . Words used in an insurance contract are to be given their plain, ordinary, and generally accepted meaning unless consideration of the instrument itself shows them to have been used in a different sense. *Western Reserve Life Ins. Co. v. Meadows*, 152 Tex. 559, 261 S.W.2d 554 (1953). The rule of liberal construction in favor of the insured applies only when

the contract is ambiguous and susceptible of more than one interpretation. *Transport Ins. Co. v. Standard Oil Company of Texas*, 161 Tex. 93, 337 S.W.2d 284 (1960). The contract must be enforced as made if the language used is plain and unambiguous. *Home Ins. Co., New York v. Rose*, 152 Tex. 222, 255 S.W.2d 861 (1953)."

Hermetic had rewound the motor for C–B Air Conditioning Company who picked it up and reinstalled it in the air conditioning unit at the Kona Inn Apartments. About a year later, the unit was giving trouble and someone at Kona Inn Apartments called Frymire Engineering Company and in response to the call, Hargis and Lucas were repairing it when it exploded. Hermetic, Hargis and Lucas argue that the exception in the policy relied on by Maryland is not applicable because Hermetic had not performed what it was to have performed; therefore, there was not a completed operation.

## COMPLETED OPERATIONS

Plaintiffs cite *Fidelity and Casualty Company of New York v. Horton & Horton Custom Works, Inc.*, 462 S.W.2d 613 (Tex. Civ.App.—Fort Worth 1971, writ ref. n.r.e.) in support of their contention that the operation was not completed because Hermetic had failed to perform a substantial requirement essential to the intended function of the motor. The facts and the policy provisions in that case are distinguishable from those in the case at bar. Their insurance company contended an exclusionary clause applied, which provided:

" 'This policy does not apply: * * * under coverages B and D, to injury to or destruction of * * * property in the care, custody or control of the insured (Horton) * * * as to which the insured for any purpose is exercising physical control, * * * or (to) work completed by or for the named insured, out of which the accident arises.' (Emphasis supplied)."

"Work completed" was not defined in that case, but is defined in the case at bar. The definition of "completed operations" in the instant case and the lack of such definition in *Horton* is a distinguishing factor.

Other cases cited by plaintiffs are *Hardware Mutual Casualty Co. v. Schantz*, 186 F.2d 868 (5th Cir., 1951) and *Daniel v. New Amsterdam Casualty Company*, 221 N.C. 75, 18 S.E.2d 819 (1942). The cited cases are distinguishable from the instant case because there was no definition of "completed operations" or the definition given was substantially different from the definition in the instant case.

The position of Maryland is summed up in *Green v. Aetna Insurance Company*, 397 F.2d 614 (5th Cir. 1968) wherein the leading Texas cases are discussed and exclusionary clauses similar to the ones in this case are construed. The court stated:

"We are *Erie* [*Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188] bound to follow Texas law which on the facts here is not difficult to ascertain. We rely principally upon two Texas cases to support our view. They are *Pan American Insurance Company v. Cooper Butane Company*, 157 Tex. 102, 300 S.W.2d 651 (1957), and *Maryland Casualty Company v. Knorpp*, 370 S.W.2d 898 (Tex.Civ.App.1963) (writ ref'd n.r.e.). We rely also on our earlier opinion on the first appearance of this case here. (Footnote 1, supra.) See also, *Pan American Insurance Company v. White*, no writ history, 321 S.W.2d 337 (Tex.Civ.App.1959).

We first outline the analysis of *Cooper* as it was articulated by Judge Brown in writing for this court in the earlier appearance here of the case sub judice:

1) Liability under the policy 'is a matter of contract upon which contract principles apply'.

2) 'Policy provisions excluding liability for damages occurring after an assured's activity has ceased are perfectly valid.'

3) The plain meaning of language comparable to that of '(2) operations' (of the policy in suit, supra) 'excludes occurrences taking place after operations have been completed'.

4) 'Premises—Operations' hazard does not encompass 'damages growing out of failures occurring away from premises owned, rented, or controlled by the as-

sured and happening after operations have been completed * * *.'

5) 'Operations' need not be tied to a product which is manufactured, sold, handled or distributed in order to make the 'completed operations' section of the Products Liability hazard operative.

While it is true that the Texas Supreme Court in *Cooper* dealt only with questions of whether 'operations' had been 'completed,' that court recognized, we think clearly, that if the operations had been 'abandoned,' the same result would be reached. It stated:

If the insured had wished coverage for liability for damages growing out of accidents occurring *after operations* had 'been completed or *abandoned* at the place of occurrence thereof and away from premises owned, rented or controlled by the insured' it should have purchased coverage against hazard No. 4, 'Products'. It did not do so.

*Knorpp*, supra, adds strength to our views with respect to what Texas courts have held. The court there held 'Division 4—Products—Completed Operations' has to do with liability after relinquishment for use (370 S.W.2d p. 903). We quote further from that opinion:

Additionally, the separate categories being mutually exclusive, coverage is not afforded under 'Division 1—Premises—Operations' *if the basis upon which liability is asserted occurred after operations were relinquished for use* because such coverage under the policy is afforded under 'Division 4—Products—Completed Operations,' a category not purchased. Had the building not been relinquished for use the accident would not have occurred because storage would not have begun in the building. (p. 904) (Emphasis supplied).

* * * * * *

* * * a careful study of the form and design of the policy reveals that it was written to cover, among others, two particular situations. First, that which arises when an accident occurs while the assured is engaged in the actual work of the business for which he has purchased coverage. Having purchased coverage under 'Division 1—Premises—Operations' appellees would have had coverage thereunder for an accident up to the point of relinquishment for use. The second situation is when an accident arises after the assured has completed his work and due to some negligent operation on his part damages are suffered by a third party. If the assured had purchased coverage under 'Division 4—Products—Completed Operations' he would have had protection for such a situation, * * *. (p. 904)

* * * * * *

In this case the building had been relinquished by appellees for use, whether rightfully or wrongfully. The Third Party was using it when it collapsed from what Third Party Plaintiff alleged was original negligent erection of the building. Thus, they would have been covered had they purchased coverage under 'Division 4,' but since it had been relinquished for use they did not have coverage under 'Division 1—Premises—Operations'. (p. 904)

It is certain, as we have said, that the drill collar with which Schafer was injured had been 'relinquished for use' at the time of the accident.

On the merits of appellant's case, we are unable to say that Rotary was covered with respect to the Schafer injury. On the contrary, we are of the firm view that the undisputed facts here show that such coverage was excluded by the language of the policy. Rotary did not elect to buy the type of coverage to which Schafer may now resort."

The court also stated:

"Additionally, appellant urges that the language of the policy here involved is ambiguous and, thus, that he is entitled to a favorable construction of its 'ambiguous' language. The short answer is that we held, on the first appearance of this case here (Footnote 1, supra), that the Supreme Court of Texas in *Cooper*, supra, had made policies of this type quite clear.

The Supreme Court of Texas in *Cooper* reversed a court of civil appeals opinion which held a similar policy to be ambiguous, and in *Knorpp*, supra, the court held that the standard form Comprehensive General Liability policy was not ambiguous, even though it was not prepared with a view of 'relaxing the mind'. The effect of our holding on prior appeal, when we affirmed that part of the declaratory judgment decreeing that Aetna had no duty to defend, was to hold the policy not to be ambiguous. It would now be absurd, in determining the related duty of paying the judgment, to hold it to be ambiguous. It is also significant that on that prior appeal this court expressly and specifically rejected most of the case authorities cited to this point by appellant. See Footnote 13, *Green v. Aetna Insurance Company*, 349 F.2d 919, 923 (5 Cir. 1965)."

In a case of similar facts to the case at bar, the court in *Casey v. Employers National Insurance Co.*, 538 S.W.2d 181 (Tex. Civ.App.—Dallas 1976, writ ref. n. r. e.) had occasion to interpret a "completed operations hazard" clause and stated:

"In May 1974, Cress Container Corporation began occupation of the area in which the water pipe was located although the entire building project was only 75% complete. They accepted that area in June 1974. In September 1974, the water pipe broke, resulting in plaintiff's damage. Since the policy specifically excluded 'Completed Operations Hazards' and, since the damaged portion of the building had been put to its intended use by the owner, the damage here is not included within the policy coverage. Cf. *Pan American Insurance Co. v. Cooper Butane Co.*, 157 Tex. 102, 300 S.W.2d 651, 652 (1957).

Plaintiff argues, however, that, even though the damage occurred in a completed part of the building, the exclusionary clause was inapplicable because the entire building was not complete. We cannot agree. This construction of the language of the policy is contrary to the explicit definition of 'Completed Operations Hazards.' Under the language in this definition, when that portion of the work was complete, and when the lessee occupied and used the plumbing, the liability coverage under the policy ceased. If plaintiff desired this excluded coverage, it could have obtained it by payment of an additional premium. This it chose not to do."

■ The explosion of the unit did not occur on the premises of Hermetic. If the unit was in need of correction, repair or replacement because of any defect or deficiency, there was a completed operation as defined by the policy and the injury having occurred after the unit was physically delivered to C–B Air Conditioning Company, the exclusionary clause as to completed operations was applicable in this case. There was no coverage or liability on the part of Maryland.

Since we find that the exclusionary clause relating to the completed operations is applicable, there is no necessity for us to determine if the products hazard exclusion is applicable.

Plaintiffs argue that res judicata and collateral estoppel resulting from the judgments recovered by Hargis and Lucas against Hermetic prevent Maryland from now litigating its policy defenses.

■ The question of liability and of coverage are separate and distinct. The prior judgments are not binding on Maryland as to coverage. A brief statement that gives the correct rule is in *Farm Bureau Mut. Automobile Ins. Co. v. Hammer*, 177 F.2d 793 (4th Cir. 1949):

"It is, however, obvious that the binding effect of a judgment against the insured does not extend to matters outside the scope of the insurance contract, and that the Insurance Company is neither obligated to defend nor bound by the findings of the court if the claim against the insured is not covered by the policy. To hold otherwise would be to estop the Insurance Company by the acts of parties in a transaction in which it has no concern and over which it has no control, and to deprive it of its day in court to show that the transaction is foreign to the contract of insurance . . ."

In *National Union Fire Insurance Company v. Bourn*, 441 S.W.2d 592 (Tex.Civ.App. —Fort Worth 1969, writ ref. n.r.e.), the question that was decided was whether the policy provided coverage for liability of two named insureds in the light of the policy exclusions. In a prior suit where the insurance carrier was not a party, there were findings that two of the parties involved were guilty of assault and battery upon plaintiff. After the entry of that judgment, plaintiff then filed suit against the defendant's insurance carrier. The policy involved did not provide coverage for personal injury that was intentionally caused by the insured. The court held that the findings in the prior judgment as to negligence were not binding on the insurance carrier in the suit where the matter of coverage was being litigated.

In the judgments that Hargis and Lucas recovered against Hermetic, the court found that the defendant was negligent in failing to complete rewinding the compressor and guilty of general negligence; that plaintiffs had not assumed any risk; were not guilty of contributory negligence; and, defendant had no affirmative defense. The court also found that there was no fraud or collusion in the entry of the judgments or circumstances surrounding same. There were no findings in the judgments that were necessary to the judgments that are binding on Maryland as to coverage. In *Berger v. Kirby*, 135 S.W. 1122 (Tex.Civ. App.—1911), aff'd, 153 S.W. 1130 (Tex. 1913), the court stated:

> ". . . As admitted by counsel for the appellant, the rule is that 'the estoppel of a judgment extends only to the points directly involved in the action decided, and not to any matter which was only incidentally cognizable, or which came collaterally in question.' This is true, even though the matter coming collaterally in question may have been judicially passed on. 23 Cyc. p. 1309. At most, the question as to whether or not the appellant was the wife of the said A. Berger was only incidentally cognizable before the county court, and whatever adjudication there may have been in reference

thereto was merely collateral and incidental, and not conclusive."

See: *Employers Mutual Casualty Company v. Lee*, 352 S.W.2d 155 (Tex.Civ.App.— Houston 1961, no writ); *Adcock v. Schweizer*, 190 S.W.2d 705 (Tex.Civ.App.—Dallas 1945), rev'd on other grounds, 145 Tex. 64, 194 S.W.2d 549 (1946).

The prior judgments in favor of Hargis and Lucas were not binding on Maryland in litigating coverage in the instant case.

We have considered all of Hargis' points of error and they are overruled. Judgment of the trial court is affirmed.