FIRST NATIONAL BANK OF JEFFERSON, Texas, Appellant,

v.

TRI–STATE GENERAL AGENCY, INC., Appellee.

No. 8625.

Court of Civil Appeals of Texas, Texarkana.

Feb. 20, 1979.

Rehearing Denied April 24, 1979.

J. R. Cornelius, The Cornelius Law Firm, Jefferson, for appellant.

Otto A. Ritter, Roberts, Harbour, Smith, Harris, French & Ritter, Longview, for appellee.

RAY, Justice.

This is a negligence case. Appellant (plaintiff), First National Bank, Jefferson, Texas (Bank), brought suit against appellee (defendant), Tri-State General Agency, Inc. (Tri-State), seeking damages in the sum of $5,109.73, together with costs, twelve percent (12%) penalty and reasonable attorney's fees. The jury verdict was favorable to Tri-State and the trial court entered its judgment accordingly. Appellant Bank has perfected its appeal and submits twelve points of error for our consideration.

The judgment of the trial court will be affirmed.

The evidence in this case shows that Donald Van Huss purchased a mobile home which was financed through the First National Bank in Jefferson, Texas. The mobile home was destroyed by fire on March 4, 1975. Van Huss was not carrying fire insurance. Mrs. Helen Jones Hayles, an employee of Tri-State, testified that Mrs. Pat Starkey, an employee of the Bank, called her on the morning of March 7, 1975, about 8:30 a. m. asking Mrs. Hayles if she had received the Bank's application for single interest insurance on the Van Huss mobile home. Mrs. Hayles stated that she had not yet opened her mail and did not know whether the application had been received. Mrs. Hayles then said that Mrs. Starkey told her that the mobile home had burned on March 4th; that the application had been made out after the fire, but that it had been back-dated to February 28th. Mrs. Starkey denied making the phone call and stated that she mailed the application on March 3, 1975. Mrs. Hayles testified that she told Mrs. Starkey on March 7, 1975,

during the telephone conversation that Tri-State could not accept a back-dated application and that the company could not write a policy because the fire had occurred before the application was received. It was further stated by Mrs. Hayles that she later opened her mail on March 7, 1975, found the application after learning of the fire, and nevertheless, mailed the application to Tri-State's office in Longview because that office handled all applications for coverage on mobile homes. She informed the Longview office of the fire and therefore no policy was ever issued covering the Van Huss mobile home.

The evidence shows that the application was for single interest insurance which would pay the balance of the note at the Bank in the event of the loss of the mobile home from hazards covered by a policy.

The application was on a form bearing the name of "Bank Services Agency" with a Fort Worth address. The application was apparently mailed by Mrs. Starkey to Bank Services Agency and was thereafter received from Bank Services Agency by Tri-State on March 7th. The procedure was to send applications to Bank Services Agency, a local recording agent, which in turn forwarded the application to Tri-State's office in Fort Worth. Tri-State would then send the application to its branch office in Longview and that office would issue an insurance policy through Dixie Auto Insurance Company, a non-admitted surplus line insurer, if coverage could be provided.

Mr. Bob Libby, a vice president for Tri-State, testified that Tri-State was a surplus line managing general agency that provided coverage for hard-to-place and difficult risks that are not normally covered by local recording agents. A surplus line general agency has contracts with various companies so that the agency can accept applications and issue policies for the companies that it represents. In 1975, Tri-State was writing policies covering mobile homes through Dixie Auto Insurance Company. The Longview office of Tri-State had been designated as the office to represent Dixie as the surplus line managing general agen-

cy in Texas and therefore all mobile home insurance applications were handled through that office. Tri-State was not authorized to transact its surplus lines insurance directly with an applicant, but had to deal through a regular licensed recording agent.

In response to special issues, the jury found that the application for single interest insurance was mailed on or before March 3, 1975. Tri-State had a known procedure for rejecting applications when payments to the financing institution were more than thirty (30) days past-due. The jury found that the note on the Van Huss mobile home was more than thirty (30) days past-due on the date the application was mailed. The jury also found that Tri-State did not fail to present the Bank's application to an insurance company for the issuance of an insurance policy. Conditional issues related to the alleged negligence of Tri-State in failing to present the application to an insurance company for coverage were not answered because the jury in effect found that Tri-State had presented the application to an insurance company for coverage.

The evidence supports the jury findings. Mrs. Starkey testified that she mailed the application on March 3, 1975, which supports the jury's answer to Special Issue No. 1. Pat Starkey admitted that the note was more than thirty (30) days past-due and the Bank records so indicated, all of which supported the jury's answer to Special Issue No. 2. Mrs. Hayles testified that she mailed the application to Tri-State's office in Longview on the same date that she received it, that is, March 7, 1975, and that Tri-State's office in Longview was in charge of issuing policies on mobile homes through companies for which it was an agent. This testimony substantiates the jury's finding in response to Special Issue No. 3, that the Bank's application for insurance was presented to an insurance company for coverage because the testimony shows that Tri-State General Agency was an agent for Dixie Auto Insurance Company through whom the policies were ordinarily written.

This case was tried on the theory that the application blanks of Bank Services Agency which were left at the Bank constituted an offer to provide insurance coverage and that when the application was mailed by Mrs. Starkey on March 3, 1975, that such mailing constituted an acceptance of the offer to provide coverage. However, the Bank employees could not testify that Tri-State had left the applications with the Bank or that Tri-State had offered to provide insurance coverage when an application was mailed to Bank Services Agency. There is no proof in the record that Tri-State had in any way made an offer to the Bank to provide single interest insurance coverage on property financed by the Bank. Further, there is no proof in the record which shows that Tri-State was obligated to furnish the Bank insurance upon the receipt of an application for coverage. Since there was no proof that Tri-State owed a duty to the Bank, to provide insurance coverage, its failure to issue the requested policy did not constitute negligence. The usual negligence case is based on a fact situation in which the insurance company unreasonably delays in passing on the application to a potential carrier, thereby depriving the claimant of the opportunity of getting other insurance. See 43 Am.Jur.2d, Insurance, Sec. 215. It cannot be said that Tri-State has been guilty of unreasonable delay in this case since the fire occurred before it received the application. As a general rule, an insurance company is not bound to accept an application or proposal for insurance, but may reject it for any reason or arbitrarily. 43 Am.Jur.2d, Insurance, Sec. 213, p. 269. For an analogy, see *Texas Life Insurance Company v. Shuford*, 131 S.W.2d 118 (Tex.Civ.App. San Antonio 1939, no writ). Since Tri-State learned of the loss before receiving the application for coverage, it could not issue the policy under the circumstances of this case, even though the application may have been mailed by Mrs. Starkey to Bank Services Agency in good faith. It is contrary to public policy for an insurance company, the business of which is affected with a public interest, knowingly to assume the burden of a loss that occurred prior to making the contract to provide insurance coverage. *Burch v. Commonwealth County Mutual Insurance Company*, 450 S.W.2d 838 (Tex.1970). In the present case, the loss had already occurred when the application for coverage was received by Tri-State from Bank Services Agency and Tri-State as agent for the carrier had already learned of the loss. No policy could have been issued in good faith and Tri-State would have violated public policy by doing so.

Estoppel is not applicable to this case, as asserted by appellant, for the reason that estoppel cannot be used to create a contract. It is defensive in character and cannot be used to create a cause of action. *Snow v. Gibraltar Life Insurance Company of America*, 326 S.W.2d 501 (Tex.Civ.App. Dallas 1959, writ ref'd n. r. e.); 22 Tex. Jur.2d, Estoppel, Sec. 20.

The testimony of Milton Jones was properly excluded as being immaterial. His testimony was to have been offered for the purpose of showing that Tri-State was negligent in handling the application, but the Bank never proved that Tri-State owed it any duty to provide insurance coverage. Further, the jury found that Tri-State presented the application to an insurance company for coverage and the testimony of Mr. Jones, as an expert witness, would not have refuted this finding.

Appellant's points of error are overruled. The judgment of the trial court is affirmed.

CORNELIUS, C. J., not participating.