CULLEN/FROST BANK OF DALLAS, N.A., Appellant,

v.

COMMONWEALTH LLOYD'S INSURANCE COMPANY and United States Fire Insurance Company, Appellees.

No. 05–91–00755–CV.

Court of Appeals of Texas, Dallas.

Feb. 19, 1993.

Rehearing Denied April 14, 1993.

Joseph E. Burns, Jerome B. Ferguson, III, Dallas, for appellant.

Kevin J. Cook, James D. Stanton, DeHay & Blanchard, L.L.P., Dallas, for State.

Before THOMAS, OVARD and MALONEY, JJ.

## OPINION

THOMAS, Justice.

This is a declaratory-judgment action concerning an insurer's duty to defend an insured. The trial court granted summary judgment in favor of Commonwealth Lloyd's Insurance Company (Commonwealth) and United States Fire Insurance Company (U.S. Fire),[1] finding that they had no duty to defend Cullen/Frost Bank of Dallas (Bank). Bank asserts nine points of error generally complaining that the trial court erred by granting the summary judgment, entering a take-nothing judgment against Bank on its counterclaim, and overruling its motion for new trial. We agree that the trial court erred in granting Insurers' motion for summary judgment and in rendering a take-nothing judgment against Bank on its counterclaim for a defense. Accordingly, we reverse the trial court's judgment and remand the cause for further proceedings consistent with this opinion.

## FACTUAL BACKGROUND

In October 1982, Bank foreclosed on nine units of a ten-unit condominium project known as 3710 Holland Condominiums (the property). Bank began selling individual units in May 1983. On September 23, 1987, various condominium owners who had purchased their units from Bank in 1984 and 1985 filed a lawsuit styled *Norman T. and Carolyn H. Tompkins, Darrell and Dixie Wright, Jordan Thomas, Douglas Crowder and Robert Peinado, Jr. v. Cullen/Frost Bank of Dallas, N.A.*, Cause No. 87–12836–F, in the 116th District Court of Dallas County, Texas (the Tompkins suit). The second amended petition[2] in the Tompkins suit asserted the following claims: (1) section 17.50(a) of the Deceptive Trade Practices–Consumer Protection Act (DTPA) for false, misleading, or deceptive representations because the quality of the property sold to them did not conform to the quality represented; (2) breach of express or implied warranties because the condominiums delivered did not conform to the representations made; (3) rescission; and (4) negligence in disbursing funds for construction of the property and in failing to correct the alleged defects in the property. The Tompkins plaintiffs sought to recover the cost to repair the defects or, alternatively, the difference in market value between the condominiums as represented and as delivered, plus treble damages under DTPA, and attorney's fees. Robert D. Armstrong subsequently intervened as a plaintiff in the Tompkins suit. He alleged essentially the same claims and damages.

Bank notified Insurers of the Tompkins suit and demanded a defense and indemnity under three Commonwealth policies and two U.S. Fire policies. Insurers notified Bank that, in their opinion, the allegations in the Tompkins suit were not within the

---

1. Commonwealth and U.S. Fire are referred to collectively as "Insurers."

2. Although pleadings prior to and subsequent to the second amended petition were filed in the Tompkins suit, the second amended petition appears to be the only pleading at issue in this summary-judgment proceeding.

coverage of the policies or, alternatively, were excluded from coverage. Insurers then filed this action for a declaratory judgment that they had no duty to defend Bank in the Tompkins suit. Bank counterclaimed for a defense and indemnity. The trial court granted Insurers' motion for summary judgment finding that, as a matter of law, Insurers had no duty to defend Bank in the Tompkins suit.

## DUTY TO DEFEND

In the first five points of error, Bank argues that the trial court erred in granting Insurers' motion for summary judgment. In reviewing a summary-judgment record, this Court applies the following standards:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). For the plaintiff as movant to prevail on summary judgment, it conclusively must prove all of the elements of its cause of action as a matter of law. *Cluett v. Medical Protective Co.,* 829 S.W.2d 822, 825 (Tex.App.—Dallas 1992, writ denied). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.,* 644 S.W.2d 443, 446 (Tex.1982). In a summary-judgment case, the question on appeal is whether the summary-judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more of the essential elements of the cause of action. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex. 1970).

When determining an insurer's duty to defend its insured, Texas courts follow the "eight corners" rule. Under this rule, we look only to the pleadings and the insurance policy to determine whether the duty to defend exists. *Cluett,* 829 S.W.2d at 829. The duty to defend is not affected by the facts of the case ascertained before, during, or after the suit. *Cluett,* 829 S.W.2d at 829 (citing *American Alliance Ins. Co. v. Frito-Lay, Inc.,* 788 S.W.2d 152, 154 (Tex.App.—Dallas 1990, writ dism'd)). We do not consider the truth or falsity of the allegations in the underlying pleadings. *Argonaut S.W. Ins. Co. v. Maupin,* 500 S.W.2d 633, 635 (Tex.1973). The duty to defend arises if the factual allegations against the insured, when fairly and reasonably construed, state a cause of action potentially covered by the policy. *Norvell Wilder Supply Co. v. Employers Casualty Co.,* 640 S.W.2d 338, 339, 340 (Tex.App.—Beaumont 1982, writ dism'd). In determining the applicability of provisions of the policy, we focus on the facts that show the origin of the damages, not the legal theories asserted for recovery. *Continental Casualty Co. v. Hall,* 761 S.W.2d 54, 56 (Tex.App.—Houston [14th Dist.] 1988, writ denied), *cert. denied,* 495 U.S. 932, 110 S.Ct. 2174, 109 L.Ed.2d 503 (1990). If a petition against an insured alleges only facts that are not covered by the policy, the insurer is not required to defend. *Fidelity & Guar. Ins. Underwriters v. McManus,* 633 S.W.2d 787, 788 (Tex. 1982). In determining whether the allegations in the underlying petition fall within the provisions of the insurance policy, we indulge a liberal interpretation of the meaning of those allegations. *Mary Kay Cosmetics, Inc. v. North River Ins. Co.,* 739 S.W.2d 608, 612 (Tex.App.—Dallas 1987, no writ). Any doubt as to whether the complaint states a covered cause of action is resolved in the insured's favor. *Cluett,* 829 S.W.2d at 829.

Insurers alleged that they were entitled to summary judgment because the allegations in the Tompkins suit: (1) fail to allege "property damage" or an "occurrence" as the terms are defined in the policies; (2) fall within the exclusions for

alienated property and completed operations; and (3) fail to come within the policy periods of three of the five policies at issue. Because the trial court's judgment does not state the grounds upon which the summary-judgment motion was granted, Bank must show that each ground alleged in the motion is insufficient to support summary judgment. *International Union UAW Local 119 v. Johnson Controls, Inc.*, 813 S.W.2d 558, 565 (Tex.App.—Dallas 1991, writ denied). In points of error two through five, Bank separately challenges the granting of summary judgment on each of the grounds raised by Insurers' motion for summary judgment.[3]

### A. The Policies

Five policies are at issue. Commonwealth issued three policies for the period beginning February 15, 1983 through November 6, 1987. U.S. Fire issued two policies for the period beginning November 6, 1987 through November 6, 1989. Commonwealth's policies are the older, comprehensive-general-liability forms, while the U.S. Fire policies are new forms. Although there are differences in language between the old and new forms, for purposes of this appeal, both parties essentially treat the relevant provisions the same.

The insuring agreements in all of the policies provide, in pertinent part, that Insurers will pay for property damage caused by an occurrence. The policies define "property damage" and "occurrence." All of the policies exclude liability for property damage arising out of property alienated by Bank. With the exception of the period from April 9 to November 6, 1987, the policies also exclude coverage for property damage occurring after the insured's operations have been completed or abandoned and away from the insured's premises. The property is listed as an insured premises.

### B. Property Damage

■ In the second point of error, Bank contends that the trial court erred in granting summary judgment on the ground that the petition in the Tompkins suit failed to allege property damage. It argues that the Tompkins plaintiffs alleged recurring and continuous injury to their property.

"Property damage" is defined under the three Commonwealth policies as follows:

(1) Physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of the use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

Under the U.S. Fire policies, "property damage" means: "a. Physical injury to tangible property, including all resulting loss of use of that property; or b. Loss of use of tangible property that is not physically injured."

The Tompkins plaintiffs alleged, among other things, drainage problems in the garage floor, excessive floor displacement, warped and swollen door and window frames, rotten woodwork on patio doors and windowsills, warped and uneven floors. These conditions constitute physical damage to tangible property that falls within the first part of the definition of property damage. *See Taylor–Morley–Simon, Inc. v. Michigan Mut. Ins. Co.*, 645 F.Supp. 596, 600 (E.D.Mo.1986) (cracking walls, ceilings, and floors; stress on water and gas lines; and loosening of ducts constitute "physical damage ... to tangible property"), *aff'd*, 822 F.2d 1093 (8th Cir.1987). The petition also alleged repeated breakdown of the elevators and asserted that Bank's failure to correct the complained-of conditions resulted in their *loss of use* of the property. These allegations constitute loss of use of tangible property falling within the second part of the definition of property damage. Interpreting the allegations of the petition in the Tompkins suit liberally in favor of coverage, we hold that they are sufficient

---

3. Bank's first point is a general complaint that the trial court erred in granting Insurers' second motion for summary judgment. Our discussion of Bank's second through fifth points disposes of the first point.

to allege property damage as that term is defined in the policies. We sustain the second point of error.

## C. Occurrence

In its third point of error, Bank asserts that the trial court erred in granting summary judgment on the ground that the petition in the Tompkins suit failed to allege an occurrence. Although both parties agree that there was an occurrence, they disagree as to the number of occurrences. Bank asserts that the Tompkins plaintiffs alleged continuous or multiple occurrences that fell within the coverage periods of all five policies. Insurers argue that, in this case, there was only one occurrence in Spring 1986 when, after an inspection of the property, the Tompkins plaintiffs discovered property damage.

The three Commonwealth policies define "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." The U.S. Fire policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Insurers cite several cases to support their contention that the Tompkins petitions allege only one occurrence. *See Michigan Chem. Corp. v. American Home Assurance Co.*, 728 F.2d 374 (6th Cir.1984); *Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 676 F.2d 56 (3d Cir.1982); *Interstate Fire & Casualty Co. v. Portland Archdiocese*, 747 F.Supp. 618 (D.Or.1990). We note that in these three cases, the definition of occurrence is distinguishable from the definition at issue here. The policies involved in these three cases provided that all damages arising out of exposure to substantially the same general conditions were considered as arising out of one occurrence. *Michigan Chem. Corp.*, 728 F.2d at 378; *Appalachian Ins. Co.*, 676 F.2d at 59 n. 8; *Interstate Fire & Casualty Co.*, 747 F.Supp. at 623–24. Further, the damages in all of the cases arose from exposure to substantially the same general condition emanating from one source. *Michigan Chem. Corp.*, 728 F.2d at 376, 382, 383 (distribution of contaminated livestock feed; injury occurred at time feed was shipped); *Appalachian Ins. Co.*, 676 F.2d at 61 (injuries all resulted from one source—the insured's discriminatory employment policies; the single occurrence for purposes of policy coverage was the insured's adoption of its discriminatory policies); *Interstate Fire & Casualty Co.*, 747 F.Supp. at 621, 624 (priest sexually molested child during four policy years; injury to each child occurred at the time of first molestation).

In contrast, the policies at issue here do not provide that all exposure to the same condition constitutes a single occurrence. Thus, our policies do not, by their terms, prevent there being multiple occurrences. For that reason, we conclude that *Michigan Chemical Corp.*, *Appalachian Insurance Co.*, and *Portland Archdiocese* are not dispositive of this issue.

In dealing with the definition of occurrence in the instant case, both sides cite *Dorchester Development Corp. v. Safeco Insurance Co.*, 737 S.W.2d 380 (Tex.App.—Dallas 1987, no writ). This Court held that coverage is not afforded unless an identifiable damage or injury, other than merely causative negligence, takes place during the policy period. *Dorchester Dev. Corp.*, 737 S.W.2d at 383. The time of the occurrence is when the complaining party actually was damaged, not the time that the wrongful act was committed. *Dorchester Dev. Corp.*, 737 S.W.2d at 383. In cases involving continuous or repeated exposure to a condition, there can be more than one manifestation of damage and, hence, an occurrence under more than one policy. Under the definitions of occurrence at issue here, there can be a new occurrence each time the complaining party suffers damage. *See Dorchester Dev. Corp.*, 737 S.W.2d at 383. We reject the argument that there can be only one occurrence when the facts allege continuous or repeated exposure causing continued or multiple property damages over an extended period of time.

■ The petitions in the Tompkins suit alleged, among other things, drainage problems in the garage floor, excessive floor displacement, warped and swollen windows and doors, rotten woodwork, leaking in the roof, warped and uneven floors, and continual breakdown of the elevators. Property damage was discovered when an inspection in Spring 1986 revealed the complained-of defects. The petition in the Tompkins suit does not make it clear that all of the property damage, including loss of use of the property, had manifested itself by Spring 1986. The petition asserts that Bank's failure to remedy the defects has caused repeated and continued exposure causing loss of use of the property. We must resolve any doubt as to coverage in Bank's favor. *Cluett,* 829 S.W.2d at 829. With this in mind, we conclude that the pleading in the Tompkins suit alleged that at least some property damage manifested itself after Spring 1986. Thus, we conclude that the Tompkins suit involves more than one occurrence.

■ Insurers further argue that there is no coverage under the policies because Bank knew about the damage in Spring 1986. In support of this argument, Insurers rely on *Bartholomew v. Appalachian Insurance Co.,* 655 F.2d 27 (1st Cir.1981). There, the insureds, who operated a car wash, had full and complete knowledge that their car wash equipment was defective and would damage customers' cars. The insureds had sued concerning the defects before the policy at issue took effect. *Bartholomew,* 655 F.2d at 28. The court held that there was no occurrence during the policy period because the insured had knowledge of the defects in the equipment prior to the effective date of the policy. *Bartholomew,* 655 F.2d at 29. Here, Insurers contend that Bank had knowledge in Spring 1986 when it discovered the damage after a property inspection. We note that there are inconsistent allegations as to who inspected the property. At one point, the Tompkins plaintiffs allege that they had an inspection of the building done in Spring 1986 and discovered the complained-of damage. At another point, they allege that Bank discovered the damage when it con-ducted an inspection in Spring 1986. In determining whether there is a duty to defend, we must accept the allegation that the Tompkins plaintiffs inspected the property. *See Cluett,* 829 S.W.2d at 829. There is no allegation that they informed Bank of the damage or that Bank had such knowledge from any other source. Thus, we cannot say that there was no occurrence under the theory that Bank intended or expected the accident constituting the occurrence.

Further, Insurers raise the issue of Bank's knowledge for the first time on appeal. Because this issue was not raised in support of their motion for summary judgment, the judgment could not have been granted on that basis. *See* Tex. R.Civ.P. 166a(c); *City of Coppell v. General Homes Corp.,* 763 S.W.2d 448, 451 (Tex. App.—Dallas 1988, writ denied).

Insurers also urge that it is against public policy to allow Bank to obtain insurance for an occurrence that already had taken place in Spring 1986, citing as authority, *First National Bank v. Tri–State General Agency, Inc.,* 578 S.W.2d 456 (Tex.Civ. App.—Texarkana 1979, writ ref'd n.r.e.). In *Tri–State,* an insurer did not issue an insurance policy because the party seeking coverage notified an agent of the insurer that the loss already had occurred. *See Tri–State,* 578 S.W.2d at 459. There is no allegation that the Tompkins plaintiffs informed Bank of the damage or that Bank had such knowledge from any other source. We conclude that *Tri–State* does not, therefore, support Insurers' public-policy argument.

Under *Dorchester,* relied on by both parties, the occurrence takes place when the property damage manifests itself. *See Dorchester Dev. Corp.,* 737 S.W.2d at 383. Having viewed the petition in the Tompkins suit, we conclude that, for purposes of determining a duty to defend under these policies, the petitions allege continuing or multiple occurrences. Accordingly, we hold that summary judgment would be erroneous on the basis that the Tompkins suit failed to allege an occurrence.

*D. Failure to Come Within Policy Periods*

In the fourth point, Bank complains that the trial court erred in granting summary judgment on the basis that the allegations in the Tompkins suit fail to come within three of the policy periods. Insurers contend this case involves a single occurrence that took place in Spring 1986. Hence, they argue, there is no duty to defend under the three policies that were issued after Spring 1986.[4] The dispositive issue under this point is whether the petition in the Tompkins suit alleges one occurrence or multiple occurrences. We previously held that the Tompkins plaintiffs alleged continuous or repeated manifestation of property damage *beginning in Spring 1986.* The pleading in the Tompkins suit alleges continuing property damage. The Tompkins plaintiffs, therefore, claim property damage that may fall within coverage of the three policies issued after Spring 1986. The petition does not allege facts that clearly show that no property damage manifested itself during the coverage periods of the three policies issued after Spring 1986. The possibility of an occurrence within the coverage periods of the policies issued after Spring 1986 therefore gives rise to a duty to defend under these policies. We sustain the fourth point of error.

*E. Alienated–Property and Completed–Operations Exclusions*

In its fifth point, Bank complains that the trial court erred in granting summary judgment on the basis that the allegations in the Tompkins suit fell within the exclusions for alienated property and completed operations. Bank asserts that, because Bank continued to own an interest in the common areas of the property, neither exclusion applies.

▬ The alienated-property exclusions provide that the policies do not apply to property damage to premises alienated by the insured arising out of such premises or any part thereof. The Tompkins plaintiffs alleged that Bank was "offering" one or more units of the project. Insurers do not dispute that Bank continued to own at least one unit of the ten-unit property and that, as an owner of the unit, Bank owned a corresponding percentage of the common areas. The petition complains of Bank's failure to remedy the complained-of defects. Further, the petition in the Tompkins suit alleges damage to the "project" or the "property," which, as defined in the petition, refers to the entire project known as 3710 Holland Condominiums.

Insurers cite several cases to support their assertion that the Tompkins plaintiffs' claims are excluded because the property damages arise out of premises alienated by Bank. In *Reliance Insurance Co. v. Povia–Ballantine Corp.*, 738 F.Supp. 523 (S.D.Ga.1990), *aff'd*, 927 F.2d 614 (11th Cir. 1991), condominium purchasers sued the insured-developer alleging that the units were constructed in an unworkmanlike manner and sought damages relating *only to the individual condominium units. Reliance Ins. Co.*, 738 F.Supp. at 524. The court held that the alienated-property exclusion applied because the plaintiffs' damages were incurred after the sale of the units. *Reliance Ins. Co.*, 738 F.Supp. at 526. In *Taylor–Morley–Simon, Inc.*, 645 F.Supp. at 598–99, homeowners sued the insured-builder for breach of warranties and negligent construction. The *only damage* for which the plaintiffs asserted liability was damage to property alienated by the insured. *Taylor–Morley–Simon, Inc.*, 645 F.Supp. at 600. Thus, the claims fell within the alienated-property exclusion. *Taylor–Morley–Simon, Inc.*, 645 F.Supp. at 600.

Under these cases, the alienated-property exclusion precludes coverage of the underlying claims only to the extent that the Tompkins suit alleged damage to the plaintiffs' individual condominium units. Like the insureds in *Reliance Insurance Co.* and *Taylor–Morley–Simon, Inc.*, Bank alienated those units and retained no own-

---

**4.** Insurers urged that the allegations in the Tompkins petitions fail to come within the policy periods of Commonwealth policy number 500–456519–1 and U.S. Fire policy numbers 503–043644–7 and 503–061439–5.

ership interest therein. However, unlike the cases relied on by Insurers, the complaints in the Tompkins suit are not limited to the individual units. Their complaints also include loss of use of the property as a whole and property damage arising from common areas. Although Bank alienated various condominium units and a corresponding percentage of its ownership in the common areas, it also retained ownership of a percentage of the common areas through its continued ownership of at least one unit. To the extent that the Tompkins suit is based upon property damage to a common area, Bank retained an ownership interest in that property. Hence, the Tompkins suit involves property not alienated by Bank. Therefore, we conclude that summary judgment based on the alienated-property exclusion of the policy would be erroneous.

■ Bank also contends that, because it continued to have an ownership interest in the common areas, the completed-operations exclusion does not apply. The Commonwealth policy provides that "completed-operations hazard" includes:

bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, *but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured.* "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:
(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,
(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or
(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in

performing operations for a principal as part of the same project.

(Emphasis added.) The completed-operations exclusion controls the general-liability-coverage section of the policies. *LaBatt Co. v. Hartford Lloyd's Ins. Co.*, 776 S.W.2d 795, 800 (Tex.App.—Corpus Christi 1989, no writ).

Insurers rely on several cases to support their contention that the Tompkins plaintiffs' claims fall within the completed-operations exclusion. In *Consolidated Underwriters v. Loyd W. Richardson Construction Corp.*, 444 S.W.2d 781 (Tex.Civ.App.—Beaumont 1969, writ ref'd n.r.e.), there was an accident on a road that had been repaired by the insured. The petition in the underlying suit specifically alleged that the insured had completed its work and activities, which had been accepted. *Consolidated Underwriters*, 444 S.W.2d at 783. The court held that the insurer owed no duty to defend. *Consolidated Underwriters*, 444 S.W.2d at 784. That case is of little help in our disposition of this case. Our case is not clear-cut because the Tompkins petitions make no statement that anything had been completed by Bank.

In *Hargis v. Maryland American General Insurance Co.*, 567 S.W.2d 923 (Tex. Civ.App.—Eastland 1978, writ ref'd n.r.e.), employees were injured while working on an air conditioning unit. *Hargis*, 567 S.W.2d at 924. One year prior to the explosion, the insured had rewound the unit's motor. The court held that the underlying causes of action fell within the completed-operations exclusion because the explosion of the unit did not occur on the insured's premises and because the injury occurred after the unit had been physically delivered. *Hargis*, 567 S.W.2d at 927. We conclude that *Hargis* is distinguishable because, as previously stated, to the extent that the Tompkins plaintiffs alleged damage to a common area of the property, the property damage occurred on premises still owned by Bank.

In *Mary Kay Cosmetics, Inc.*, the plaintiff sued the insured for damages arising from the faulty installation of storage tanks. 739 S.W.2d at 609. The pleadings

alleged that the injury occurred "after the [property] had been put to use by the Plaintiff." *Mary Kay Cosmetics, Inc.,* 739 S.W.2d at 612. The court held that this allegation brought the claims within the policy's completed-operations clause because operations were deemed completed "when the portion of the work out of which the injury or damage arises has been put to its intended use." *Mary Kay Cosmetics, Inc.,* 739 S.W.2d at 612.

In all of the cases cited by Insurers, the insured had relinquished all possession or control of the property out of which the damage occurred. Here, Bank, by virtue of its continued ownership interest in the common areas, had not relinquished all possession or control to the common areas and part of the complaints in the Tompkins suit involve a common area. Thus, the completed-operations exclusion does not apply because not all of the alleged property damage occurred away from the premises owned by Bank. We conclude that the petition in the Tompkins suit alleges property damage that does not fall within the completed-operations exclusion.

Moreover, there was no completed-operations exclusion from April 9 to November 6, 1987. Because the petition in the Tompkins suit alleged multiple occurrences *beginning in Spring 1986,* there is a possibility that there was an occurrence during the time that no completed-operations exclusion was in effect. There is, therefore, a possibility of coverage giving rise to the duty to defend under the policy in effect during the period from April 9 to November 6, 1987. We conclude that the trial court erred if it granted summary judgment based on the completed-operations exclusion. The fifth point is sustained.

For these reasons, we conclude that the grounds alleged in Insurers' motion do not support the trial court's granting of summary judgment. Accordingly, we hold that the trial court erred in granting the summary judgment.

5. It is unnecessary to address Bank's other complaints in view of our disposition of points of

**BANK'S COUNTERCLAIM**

In its eighth point of error, Bank argues that the trial court erred in entering a take-nothing judgment in its counterclaim for a defense. We already have concluded that the trial court erred in granting summary judgment on the basis that Insurers' had no duty to defend. Therefore, we further hold that the trial court erred in entering a take-nothing judgment on Bank's counterclaim for a defense. We sustain the eighth point of error.

We reverse the trial court's judgment and remand this cause for further proceedings consistent with this opinion.[5]

error two through five, and eight.